

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00249-CR

---

EMMANUEL MUNOZ, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR01362

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Jennifer Nolan was awakened by pain in her anus and removed Emmanuel Munoz's hand from it. She testified that one leg of her underwear had been torn and that her sensations led to the conclusion that Munoz had placed fingers inside her anus. Later that day, Munoz admitted to Bogota police officer Jacob Stinson at their first contact that Munoz had been trying to be intimate with his wife. Nolan and Munoz had been divorced some years ago, but were living together, as Nolan provided needed care to the physically unwell Munoz.

Munoz appeals from the resulting revocation of his community supervision, asserting that the evidence is insufficient to support the revocation and that the attorneys' fees were erroneously assessed against him. We modify the judgment to remove the attorneys' fees assessment and affirm the judgment as modified.

*(1)     Sufficient Evidence Supports the Revocation of Munoz's Community Supervision*

We review for an abuse of discretion the trial court's decision to revoke community supervision. *Meyer v. State*, 366 S.W.3d 728, 729 (Tex. App.—Texarkana 2012, no pet.). When the revocation order is supported by a preponderance of the evidence, the trial court does not abuse its discretion. *Id*. at 729–30. We review the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown. *Lively v. State*, 338 S.W.3d 140, 143 (Tex. App.—Texarkana 2011, no pet.). We must respect the trial court's role in evaluating witness credibility, resolving conflicts in the evidence, and drawing reasonable inferences from the evidence. We

2

must assume the trial court resolved evidentiary issues in a way that supports the judgment. *Meyer*, 366 S.W.3d at 730.

The question here centers on Nolan's testimony that she believes her ex-spouse, with whom she shared a bed, had placed fingers inside her anus while she slept, causing her considerable pain. Her belief was based on the living arrangement, her pain, her awaking to slap Munoz's hands away, and her torn underwear. We conclude that this is sufficient evidence to find sexual assault and to justify the revocation of Munoz's community supervision.

Nolan and Munoz had divorced in 2008. Munoz had been placed on community supervision in 2009. He was released from drug counseling in April 2012, and Nolan and their children moved back in with him then. On September 26, 2012, he was in an automobile accident that resulted in a lengthy hospitalization—with some time on life support—and ultimately left him a paraplegic confined to a wheelchair. After the accident, she acted as his caretaker, and she and the children lived with him. It appears that they were supported solely by his disability checks.

Stinson testified that, around 5:30 p.m., August 24, 2013, while Stinson was driving down a road, Munoz flagged him down and asked him to remove Nolan from the house, claiming, "[S]he's crazy" and stating that he was tired of dealing with her. While Stinson and Munoz talked in the driveway, Nolan came out of the house crying and told Stinson about the assault earlier in the day. When Stinson asked Munoz about it, Munoz said she was his wife and "he was just trying to be intimate with her."

3

There is some internal inconsistency in the evidence, but the incident occurred either at 4:00 a.m. or, as Nolan testified at trial, around 11:30 a.m. Stinson stated that he had had other calls to their residence, but declined the State's effort to characterize the relationship between Nolan and Munoz as "stormy," as the calls had all been concerning their children.

The State summarized a statement that Nolan made to the Sexual Assault Nurse Examiner (SANE). The statement quoted Nolan:

> [I] woke up because I felt pain in my rectum and felt like he was cramming several fingers in my anus. My rear end is still hurting . . . when I woke up, I asked him what he was doing. I grabbed his hand threw it off of me. I told him that he could not do things like that when I'm sleeping.

Nolan agreed that this is what she had told the nurse.

Nolan reiterated her statements and attempted to clarify the misunderstanding about the time this occurred. The officer had been told it occurred about 4:00 a.m., but other evidence suggested that it had actually occurred around 11:00 a.m. Nolan testified that, when she awoke in pain and went to the bathroom, although her shorts were intact, her underwear had been torn off of one leg. She was questioned about why she had not called police if she believed herself assaulted, but could provide no explanation for her inaction. She testified that she had screamed at him, spat in his face, and asked him how he could do that to her.

Nolan also testified about Munoz's present physical condition. He is confined to a wheelchair, is not sexually functional, and had been out of the hospital a fairly short time after spending several months recuperating from the accident. She testified that he has "a wound that is deep enough to stick your head in. He just had a port going into his heart. He has staph infection. He's very ill."

4

The State had no recommendation for punishment. The State erroneously informed the court that the punishment range was two-to-twenty years, but was corrected by defense counsel, who informed the court that the range of punishment was two-to-ten years' confinement on the underlying third degree felony. The court then found that Munoz had committed aggravated sexual assault, but the State ultimately corrected that misstatement, as the allegation was of sexual assault. The court found the allegations true and sentenced Munoz to ten years' confinement.

The evidence is legally sufficient. The trial court did not abuse its discretion in finding that Munoz had violated a condition of his community supervision.

*(2)    Attorneys' Fees Were Erroneously Assessed Against Munoz*

Munoz also contends that, because he is indigent, the court erred in assessing $900.00 in attorneys' fees against him. Court-appointed attorneys' fees cannot be assessed against an indigent person unless there is proof and a finding that he or she is no longer indigent. *Cates v. State*, 402 S.W.3d 250 (Tex. Crim. App. 2013); *Mayer v State*, 309 S.W.3d 552 (Tex. Crim. App. 2010). In this case, there is no such evidence or finding. The judgment is therefore faulty in this regard. The proper remedy is not to reverse the conviction, but merely to modify the judgment and remove the fee award. *Cates*, 402 S.W.3d 250; *Martin v. State*, 405 S.W.3d 944 (Tex. App.—Texarkana 2013, no pet.).

5

We modify the judgment of the trial court to delete the fees of Munoz's court-appointed attorney. As modified, the judgment is affirmed.

Josh R. Morriss, III
Chief Justice

Date Submitted:     July 7, 2014
Date Decided:       July 10, 2014

Do Not Publish

6